UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GREGG HILL, <br> an individual, <br>     PLAINTIFF <br> v. <br><br> EDGARDO GARCIA, in his official and individual capacity; <br> JOSE HERNANDEZ, in his official and individual capacity; <br> JAMES KEPAELTAS, in his official and individual capacity; <br> DEREK GAFFINEY, in his official and individual capacity; <br> DETECTIVE O'NIEL, in his official and individual capacity; <br> RON GRANT, in his official and individual capacity; <br> MARCOS ORTIZ, in his official and individual capacity, <br><br>     DEFENDANTS. | Case No. 3:24-cv-00004 |

## COMPLAINT

Plaintiff GREGG HILL ("Hill" or "Plaintiff") hereby sues Defendants, EDGARDO GARCIA, in his official and individual capacity, JOSE HERNANDEZ, in his official and individual capacity, JAMES KEPAELTAS, in his official and individual capacity, DEREK GAFFINEY, in his official and individual capacity, DETECTIVE O'NIEL, in her official and individual capacity, RON GRANT, in his official and individual capacity, MARCOS ORTIZ, in his official and individual capacity.

This action is brought under 42 U.S.C. § 1982 and the laws of the State of Texas to hold the City of Dallas, via its policymaker, the Chief of Police, and six of its officers accountable for their unreasonable, unlawful, malicious violations of Plaintiff's rights.

In or around the January 6, 2022, Plaintiff, Gregg Hill, was unlawfully, physically pulled out of his residence by Defendants KEPAELTAS and an unknown female sargeant. Hill had allowed Elizabeth Griffith ("Griffith") to enter his residence to feed her dog and rest for a few hours. Hill later notices that Griffith has a syringe with heroin in it and Hill immediately tells Griffith to leave his residence. Griffith refuses to leave and calls 911. Defendants KEPAELTAS and an unknown female sargeant arrive and separate the two and unlawfully remove Hill from his residence. The named Defendants failed to run a search on Griffith, who has a record and was in possession of drugs, and instead arrested Hill alleging that he struck Griffith. The named Defendants failed to investigate the situation, where they could have easily discovered that Griffith was not a resident of the apartment, had not been living there or invited to live there, was in possession of drugs, was lying to police and has a criminal record. In spite of Hill's numerous attempts to explain this to police, they became abusive towards him and unlawfully, physically removed him from his own residence and later arrested him knowing that they had no legitimate charges against him.

On or about January 8, 2022, Hill posted bail and was released where he returned home with a locksmith to reenter his residence. Whlie the locksmith was trying to open the door, Griffith starts screaming at Hill and the police show up again. They speak with Griffith and again fail to do their due diligence and immediately arrest Hill unlawfully AGAIN. Hill had A third party locksmith present during the entire incident and the Defendants refused to listen to Hill or the third party, who told them that Griffith did not belong at the residence and was lying. The Defendants

again, unlawfully, physically pulled Hill from his residence and arrested him with no legitimate charges a second time.

Hill returned home later and all of his possession were stolen by Griffith including his new car. Hill called the police to report the theft and the Defendants once again show up at his apartment to take the report. It was apparent to Hill that the Defendants KEPAELTAS and the same unknown female sargeant were aware of their unlawful arrests and malicious violations of Hill's rights as each of the officers stared at the ground the entire time during the report. In spite of this, Hill had to have a court appointed attorney fight for almost a year before all charges were dropped, further harassing him and showing Defendant's malicious violations.

Hill's car was reported stolen at that time, and police later pulled Griffith over while driving Hill's vehicle. They failed to arrest her but instead impounded the vehicle and let her leave. Through Hill's own efforts and using the stolen iPhone that Griffith was using, he discovered where Griffith was staying and called the police to alert them. Hill has called them over fifty (50) times regarding his stolen property and they have failed to return a single call.

As a result of Defendants' unreasonable, unlawful, malicious violations of Plaintiff's rights, Plaintiff had over $70,000.00 worth of personal belongings stolen from him, including his automobile, bank accounts, other cash accounts and personal items that cannot be replaced. This financial loss resulted in him being evicted from his apartment and homeless following Defendants' unlawful actions.

Plaintiff now turns to this Honorable Court in pursuit of justice.

## JURISDICTION AND VENUE

1. This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988, alleging violations of the First and Fourth Amendments to the Constitution of the United States of America, as well as the laws of the State of Texas.

2. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. §§1331, 1343, and 1367.

3. Venue is properly located in the Northern District of Texas of the Dallas Division pursuant to 28 U.S.C. § 1391(b) because venue lies in the judicial district of the property situs or the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. The Defendant's property is located in and conducts activity within this judicial district and all events giving rise to this lawsuit occurred in this judicial district.

4. Plaintiff, GREGG HILL, is and has been at all times relevant to the instant matter, a natural person residing in Texas and is sui juris.

## PARTIES

5. Plaintiff, Gregg Hill, is a resident of Dallas County, and at all times relevant hereto, resided in the City of Dallas, Texas.

### Defendant Edgardo Garcia

6. Defendant Edgardo Garcia ("Garcia") is employed by the Dallas Police Department as the Chief of Police and supervises the affairs of the other Defendants and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### Defendant Jose Hernandez

7. At all times relevant hereto, Defendant Jose Hernandez was employed by the Dallas Police Department ("DPD").

8.    Jose Hernandez, badge #12123 was an arresting officer and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### Defendant James Kepaeltas

9.    At all times relevant hereto, Defendant James Kepaeltas was employed by the Dallas Police Department ("DPD").

10.   James Kepaeltas badge #10439 was an arresting officer and may be served personally at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### Defendant Derek Gaffiney

11.   At all times relevant hereto, Defendant Derek Gaffiney was employed by the Dallas Police Department ("DPD").

12.   Derek Gaffiney was a burglary detective and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### Defendant Detective O'Neil

13.   At all times relevant hereto, Defendant DETECTIVE O'Neil was employed by the Dallas Police Department ("DPD") but over 18 months failed to return the call of Plaintiff and failed to investigate this properly.

Defendant Detective O'Neil is a detective and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### Defendant Ron Grant

14.   At all times relevant hereto, Defendant Ron Grant was employed by the Dallas Police Department ("DPD".)

15. Defendant Ron Grant is an auto theft detective and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### Defendant Marcos Ortiz

16. At all times relevant hereto, Defendant Marcos Ortiz was employed by the Dallas Police Department ("DPD".)

17. Defendant Marcos Ortiz is a family violence detective and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

### FACTS

### The Officers' Visit the Plaintiff's Residence

18. On or about around the January 6, 2022, Defendants KEPAELTAS and an unknown female sargeant, while working as officers for DPD, arrived at the Plaintiff's residence in Dallas, Dallas County, Texas.

19. During the visit, Plaintiff requested the officers assist in removing Griffith from his residence.

20. An argument had taken place between the Plaintiff and Griffith because of her using and having drugs.

21. Plaintiff opposed Griffith's wish to use drugs and demanded that she leave his apartment.

22. During the first few minutes of the officers being in the Plaintiff's residence, he made several comments to Griffith, a social friend, about her having drugs and his opposition to her having and using drugs in his residence.

23. Plaintiff also advised the officers that this was his apartment and that Griffith was a social guest and had only been there for a few hours.

24. Griffith was not on the lease to the apartment, nor listed as a resident.

25. The officers failed to confirm that Plaintiff was the only tenant with the apartment complex manager.

26. The officers using excessive force, forcibly and unlawfully pulled Plaintiff from his residence and arrested him knowing they had no legitimate charges against him.

27. Two days later after his incarceration, Hill returned to his residence, Griffith was still there and Hill again contacted the police. Defendants, the CHIEF OF POLICE EDUARDO GARCIA along with another officer, working as officers for DPD, arrived at Plaintiff's residence. The CHIEF OF POLICE EDUARDO GARCIA failed to ask for proof of residence from Griffith or Plaintiff.

28. During the visit, Plaintiff again requested the officers assist in removing Griffith from his residence.

29. A third-party locksmith was present during the entire interaction and advised the officers that Plaintiff was completely accurate in all accounts and Plaintiff was telling the truth and Griffith was lying.

30. The officers silenced Plaintiff and again arrested him under false pretenses.

31. A few days later, after being incarcerated the second time, Plaintiff returned to his residence and found his house empty. He discovered that ALL OF HIS POSSESSION HAD BEEN STOLEN BY GRIFFITH.

32. Plaintiff notified the police and officers responded, but this time, they DID NOT ARREST PLAINTIFF FOR BEING IN HIS OWN HOUSE, RATHER THEY TOOK a report noting that everything in the apartment was stolen.

33. Defendants refused to respond to Plaintiff's case against Griffith, even after finding her driving Plaintiff's vehicle.

34. Defendants refused to perform any police work on Plaintiff's case against Griffith, even after Plaintiff told them where she was with his stolen items.

35. Defendants refused to drop the false charges against Plaintiff until the Judge dismissed all charges against Hill almost a year later.

36. Defendants for more than 18 months defendant failed to even return Plaintiff's call regarding his lost property as if he didn't exist.   Defendants fully discriminated against Plaintiff.

37. Plaintiff was forced to spend multiple days in prison and pay bail bond fees as a result of his wrongful imprisonment.

## COUNT I
### 42 U.S.C. §1983-Retaliation and Use of Excessive Force in Violation of the 1st Amendment of the United States Constitution

38. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

39. When alleging a First Amendment retaliation claim, a Plaintiff must show "(1) that [plaintiff's] speech was protected; (2) defendant's alleged retaliatory action adversely affected the plaintiffs constitutionally protected speech; and (3) a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." *See Dickerson v. Duncan*, Civil Action No. 7:19CV00802, 2020 U.S. Dist. LEXIS 2543, at 6-7 (W.D. Va. Jan. 7, 2020) (internal quotations omitted) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000)).

40. Defendant Kataeltas, Hernandez, and Garcia while acting under the color of the law, violated the Plaintiff's constitutional rights by using excessive force against him and arresting him for speaking mere words from inside of his own home.

41. Plaintiff was engaged in protected speech.

42. Defendant took retaliatory action against Plaintiff that adversely affected Plaintiff's constitutionally protected speech, when he pulled him out of his own home, using excessive force and arrested him.

43. These actions were directly motivated by Plaintiff's speech.

44. These retaliatory acts violated the constitutional rights guaranteed to Mr. Hill by the First Amendment of the United States Constitution. Defendant Kataeltas, Hernandez, and Garcia action were not taken in good-faith and were in violation of clearly established law.

45. Defendant Kataeltas, Hernandez, and Garcia lacked probable cause when he took these retaliatory actions against Plaintiff.

46. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

47. Because Defendant Kataeltas, Hernandez, and Garcia actions, and possibly other employees, agents, and/or representatives of the DPD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983))

## COUNT II
### 42 U.S.C. §1983 - Violation of 4th Amendment of the United States Constitution

48. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

49. Defendant Kataeltas, Hernandez, and Garcia while acting under the color of the law, violated Mr. Hill's constitutional rights by WITHOUT PROBABLE CAUSE unreasonably seizing Mr. Hill and using excessive force against him, as described herein throughout, which resulted in Mr. Hill's injuries.

50. Defendant Kataeltas, Hernandez, and Garcia actions violated the constitutional rights guaranteed to Mr. Hill by the Fourth Amendment of the United States Constitution.

51. Defendant Kataeltas, Hernandez, and Garcia actions were not taken in good-faith and were in violation of clearly established law.

52. Defendant Kataeltas, Hernandez, and Garcia used excessive force at the time they unreasonably and unlawfully pulled Mr. Hill from his residence and aggressively treated him.

53. Each named Defendant's actions were unnecessary, unreasonable, unlawful and unjustified.

54. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

55. Because Defendant Defendant Kataeltas, Hernandez, and Garcia's actions, and possibly other employees, agents, and/or representatives of the DPD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted

by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

## COUNT III
## 42 U.S.C. §1983 – Failure to Intervene in Violation of the 4th Amendment of the United States Constitution

56. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

57. Defendant Kataeltas, Hernandez, and Garcia had a duty to intervene when an officer was violating Mr. Hill's constitutional rights, which resulted in the infliction of excessive force upon Mr. Hill.

58. Defendant Kataeltas, Hernandez, and Garcia observed and/or had reason to know that excessive force was being inflicted upon Mr. Hill without a legitimate goal or justification.

59. Defendant Kataeltas, Hernandez, and Garcia had the opportunity and means to prevent the excessive use of force and/or violations of Mr. Hill's constitutionally protected rights from occurring.

60. "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *See Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id*. at 204 (internal footnote omitted)

61. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal

possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

62. Because the Defendants' actions, and possibly other employees, agents, and/or representatives of the DPD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

## COUNT IV
## 42 U.S.C. §1983 – *Monell* Liability

63. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

64. The DPD is the law enforcement agency in the City of Dallas, Dallas County, Texas.

65. The Chief of the DPD is the "policymaker" with respect to DPD, as a law enforcement agency. *See e.g., Revene v. Charles County Comm'rs*, 882 F. 2d 870, 874 (4th Cir. 1989).

66. Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. *See City of St. Louis v. Praprotnik*, 485 U.S. 112,

127 (1988).

67. Defendant Garcia, as the chief of police and policymaker for the City of Dallas, has a custom, pattern, practice, and/or procedure of hiring police officers who he knows have committed acts of violence and/or have a propensity to do so.

68. When these officers inevitably commit acts of violence while working for the DPD Defendant Garcia would ratify their unconstitutional acts and assist in covering up the officer's bad actions by charging members of the community, who fall victim to these officers, of crimes.

69. As evidence of the above-stated custom, pattern, practice, and/or procedure, the DPD covers up all acts of gender discrimination. DPD just assumed that the male at the Hill residence was responsible for the incidents that made the basis of the subject suit.

70. In the instances cited above, no person or law enforcement officer was in imminent danger and no exigent circumstances existed.

71. Moreover, Defendant Garcia was aware that civil rights violations, criminal acts, and other egregious misconduct had been carried out by his officers, but no action has been taken.

72. Consistent with and as a result of DPD's customs, patterns, practices, and/or procedures, Defendant Kataeltas, Hernandez, and Garcia unjustifiably and unlawfully pulled Mr. Hill from his home.

73. As a direct and proximate result of the DPD's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.

74. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal

possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

75. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the City of Dallas and the DPD, through its policymaker, Defendant Garcia (and possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained by Mr. Hill.

## COUNT V
### Intentional Infliction of Emotional Distress

76. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

77. By pulling Mr. Hill from his home with absolutely no reason or probable cause Defendant engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

78. Each Defendant acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from his outrageous conduct.

79. Each Defendant's actions caused Mr. Hill to suffer severe emotional distress as he was being beaten for no reason.

80. The emotional distress Plaintiff experienced was so severe, no reasonable person could be expected to endure it.

81. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal

possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

82. The actions of each Defendant against the Plaintiff were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

WHEREFORE, the Plaintiff, Gregg Hill, prays as follows:

A. Compensatory damages for all past and future economic losses and expenses incurred by the Plaintiff as a result of the Defendants' misconduct;

B. General damages for all past and future physical pain, mental suffering, and emotional distress suffered by the Plaintiff;

C. Punitive damages to the fullest extent permitted by law;

D. Pre-judgment and post-judgment interest;

E. Declare that the Defendants' acts, taken in their official capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

F. Declare that the Defendants' acts, taken in their individual capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

G. Immediately terminate all Defendant officers and investigators employment relationship with the DPD, without severance;

H. Enjoin Defendants from engaging in hiring practices that result in the hiring of police officers without proper vetting or review;

I. Order the Defendants to adopt and implement policies, training, accountability systems and practices to remedy the constitutional and statutory violations described herein;

J. An award of attorneys' fees, costs (including expert fees), and litigation expenses pursuant to 42 U.S.C. § 12205;

K.  An award of interest upon the original sums of said award of attorney's fees, costs (including expert fees), and other expenses of suit; and

L.  Such other relief as may become apparent from discovery as this matter matures for trial and as the Court deems just and proper, and/or is allowable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,
By: */s/ K. Michael Sturgill, Esq.*
K. Michael Sturgill
Counsel for Plaintiff
Texas State Bar No.: 24075588
209 2nd Street, #245
Fort Worth, TX 76102
Telephone: 214-504-6318
Email: mike@themislegalgroup.com

**DEFENDANTS TO BE SERVED:**

**EDGARDO GARCIA**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**

**JOSE HERNANDEZ**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**

**JAMES KEPAELTAS**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**

**DEREK GAFFINEY**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**

**DETECTIVE O'NIEL**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**

**RON GRANT**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**

**MARCOS ORTIZ**
**Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201**