**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GREGG HILL,**<br>**an individual,**<br>**PLAINTIFF**<br>**v.**<br><br>**EDGARDO GARCIA, in his official and individual capacity;**<br>**JOSE HERNANDEZ, in his official and individual capacity;**<br>**JAMES KEPAELTAS, in his official and individual capacity;**<br>**DEREK GAFFINEY, in his official and individual capacity;**<br>**DETECTIVE O'NIEL, in his official and individual capacity;**<br>**RON GRANT, in his official and individual capacity;**<br>**MARCOS ORTIZ, in his official and individual capacity,**<br><br>**DEFENDANTS.** | § § § § § § § § § § § § § § § § § § § § § | **Case No. 3:24-cv-00004** |

## AMENDED COMPLAINT

Plaintiff **Gregory Hill** ("Hill" or "Plaintiff") hereby files his First Amended Complaint against Defendants, **Edgardo Garcia**, in his official and individual capacity, **Jose Hernandez**, in his official and individual capacity, **James Ketaltas**, in his official and individual capacity, **Derek Gaffney**, in his official and individual capacity, and **Marcos Ortiz**, in his official and individual capacity.

## SUMMARY

This action is brought under 42 U.S.C. § 1982 and the laws of the State of Texas to hold the City of Dallas, via its policymaker, the Chief of Police, and four of its officers accountable for their unreasonable, unlawful, malicious violations of Plaintiff's rights.

On January 6, 2022, Plaintiff Gregory Hill was unlawfully removed from his own residence by Defendants Keteltas and Hernandez after he attempted to remove Elizabeth Griffith, whom he had briefly allowed inside. Hill discovered Griffith in possession of heroin and ordered her to leave, but she refused and called 911, falsely accusing Hill of assault. Officers arrived, failed to investigate Griffith's background—despite her criminal record and drug possession—and forcibly removed Hill before arresting him without probable cause.

Two days later, on January 8, 2022, after posting bail, Hill returned home with a locksmith. Griffith began screaming at him, prompting another police response. Without investigating, officers again arrested Hill, ignoring statements from the locksmith confirming Hill was the rightful resident.

Following his second wrongful arrest, Griffith stole Hill's car, personal belongings, and financial assets. Despite Hill's numerous police reports and over 50 follow-up calls, officers failed to take action, even after locating Griffith driving the stolen vehicle. Their refusal to investigate resulted in Hill losing over $70,000 in assets, being evicted, and becoming homeless. Hill was forced to fight baseless charges for almost a year before they were finally dropped.

The Defendants' unlawful arrests, failure to investigate, and deliberate indifference violated Hill's constitutional rights, causing significant emotional, financial, and physical harm.

Plaintiff now turns to this Honorable Court in pursuit of justice.

## JURISDICTION AND VENUE

1. This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988, alleging violations of the First and Fourth Amendments to the Constitution of the United States of America, as well as the laws of the State of Texas.

2. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. §§1331,1343, and 1367.

3. Venue is properly located in the Northern District of Texas of the Dallas Division pursuant to 28 U.S.C. § 1391(b) because venue lies in the judicial district of the property situs or the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. The Defendant's property is located in and conducts activity within this judicial district and all events giving rise to this lawsuit occurred in this judicial district.

4. Plaintiff, Gregory Hill, is and has been at all times relevant to the instant matter, a natural person residing in Texas and is *sui juris*.

## PARTIES

5. Plaintiff, Gregory Hill, is a resident of Dallas County, and at all times relevant hereto, resided in the City of Dallas, Texas.

### Defendant Edgardo Garcia

6. Defendant Edgardo Garcia ("Garcia") is employed by the Dallas Police Department as the Chief of Police and supervises the affairs of the other Defendants and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

**Defendant Jose Hernandez**

7. At all times relevant hereto, Defendant Jose Hernandez was employed by the Dallas Police Department ("DPD").

8. Jose Hernandez, badge #12123, was an arresting officer and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

**Defendant James Keteltas**

9. At all times relevant hereto, Defendant James Keteltas was employed by DPD.

10. James Keteltas, badge #10439, was an arresting officer and may be served personally at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

**Defendant Derek Gaffney**

11. At all times relevant hereto, Defendant Derek Gaffney was employed by DPD.

12. Derek Gaffney was a burglary detective and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

**Defendant Marcos Ortiz**

13. At all times relevant hereto, Defendant Marcos Ortiz was employed by DPD.

14. Defendant Marcos Ortiz is a family violence detective and may be served at Dallas City Hall, 1500 Marilla St. 5CS, Dallas TX 75201, or wherever he might be found.

## INTRODUCTION

15. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights under the United States Constitution, as well as state law claims.

16. Defendants unlawfully arrested Plaintiff, using excessive force, and failing to investigate and apprehend the actual perpetrator despite clear evidence and repeated warnings from Plaintiff.

## FACTS

### Hill Helps Out a Former Girlfriend, Griffith

17. On or about January 5, 2022, Plaintiff Gregory Hill allowed Elizabeth Griffith into his residence to rest and feed her dog after she claimed to be in need of temporary assistance after being released from jail.

18. Plaintiff later discovered Griffith in possession of drug paraphernalia and, possibly, heroin and immediately ordered her to leave. Griffith refused and, instead of complying, called 911 and falsely accused Plaintiff of assaulting her.

### Officers Visit Hill's Home and Arrest Him Based on Hill's Inconsistent Statements

19. On January 6, 2022, Defendants Keteltas and Hernandez while working as officers for DPD, responded to the call and arrived at the Plaintiff's residence in Dallas, Texas. Plaintiff explained that Griffith had a history with drugs, self-harm threats to falsely accuse others, and was not a resident of his home. Plaintiff also warned the responding officers that Griffith had stolen his work phone, was likely to steal other valuables, and had an extensive criminal record, including parole violations.

20. Hill requested the officers remove her from his home and informed them Griffith was only a social guest who had been there merely hours—and that his prime motivation for allowing her there was out of fear for the safety of her dog.

21. Griffith was not on the lease to the apartment, nor listed as a resident.

22. Instead of complying with Hill's request to remove Griffith from his home due to her alleged theft and drug use, the responding officers arrested Hill based on statements from Griffith that Hill had been violent with her. Statements that were wholly contradictory and lacked even a high-level investigation.

23. Plaintiff stated to the responding officers: "She is a junkie…I try to help somebody and this is what I get." He also firmly denied harming Griffith, stating: "I didn't touch her. What am I getting arrested for? Domestic violence? That's a lie." Despite his repeated pleading and explanations, Defendants failed to investigate Griffith's claims, ignored evidence of her inconsistent statements, and did not conduct a background check that would have revealed her prior offenses and active warrants. Instead, Defendants forcibly removed Plaintiff ***from his own residence*** and arrested him ***without probable cause***—leaving all his possessions, including his dogs, car and work materials—in the custody of the same person who had just accused him of domestic violence, stolen his work phone, and did not have any legal right to the apartment in question.

24. Elizabeth Griffith provided inconsistent statements to officers. Initially, she claimed her shoulder pain was "at a 4," later changing her account multiple times, stating Plaintiff "pushed her down" because of syringes she placed in the toilet and subsequently alleging Plaintiff "picked her up and threw her on the ground." Later, she claimed Hill slapped her. Police bodycam footage and photos revealed Griffith showed minimal to no visible injuries. The interrogating officer even asked her why the mark on face that she claimed resulted from Hill slapping her did not look like a handprint. Griffith had no response, but the interrogating officer did not inquire further.

25. When placing the handcuffs on Hill, who fully complied with all the officer's requests, the arresting officer twisted Hill's wrist and arm and noted to the other responding officer that it would need to be fixed because it was—in his words—all messed up.

26. Before placing Hill in handcuffs, the officer interrogating Griffith asked if Hill would put up a fight with the officers when they arrested him for domestic violence. That arresting officer then placed handcuffs on Hill prior to even telling Hill what was happening.

27. Once Hill and the officers arrived at the jail, over an hour later, Hill was in visible distress and needed to be allowed outside of the car to stand up due to an issue with his left side—which he communicated multiple times to the arresting officers. The officers assured him he would be assessed by medical staff once booked into jail but did not do anything further to assist him (other than allowing him to stand outside the cramped back seat of the squad car) at the time.

**Officers Visit Hill's Home and Arrest Him—*Again*—Based on Griffith's Statements**

28. After posting bail, Plaintiff returned home on January 8, 2022, accompanied by a locksmith to regain access to his residence. As the locksmith worked, Griffith began screaming at Plaintiff, prompting another police response—this time at the behest of Hill.

29. Defendants, the Chief of Police Edgardo Garcia along with another officer, working as officers for DPD, arrived at Plaintiff's residence. Garcia failed to ask for proof of residence from Griffith or Plaintiff.

30. When officers arrived, they again failed to conduct any meaningful investigation and, without justification, arrested Plaintiff for a second time. They did, however, note that everything had been taken from the apartment. This, coupled with Hill's earlier statements, were in alignment with the fact that it was likely Griffith who took Hill's possessions.

31. The locksmith, a neutral third party, attempted to inform officers that Plaintiff was the rightful resident and that Griffith had no legal claim to the property, but the officers refused to listen.

**Dallas PD Does Not Investigate and Hill is Left Destitute**

32. Following these events, Griffith stole Plaintiff's 2020 Toyota Camry, along with valuable business equipment, personal belongings, and financial assets. Despite Plaintiff making multiple police reports and over countless follow-up calls, Defendants refused to investigate or take action.

33. Even after police pulled Griffith over while she was driving Plaintiff's stolen vehicle, they failed to arrest her, instead impounding the vehicle and allowing her to leave. Plaintiff independently tracked Griffith's whereabouts and provided law enforcement with this information, but his repeated attempts to recover his stolen property and seek justice were ignored.

34. Defendants refused to drop the false charges against Plaintiff until the Judge dismissed all charges against Hill almost a year later.

35. Defendants for more than 18 months defendant failed to even return Plaintiff's call regarding his lost property as if he didn't exist. Defendants fully discriminated against Plaintiff.

36. Plaintiff was forced to spend multiple days in prison and pay bail bond fees as a result of his wrongful imprisonment.

37. As a direct result of Defendants' unlawful actions, Plaintiff suffered severe financial loss, emotional distress, and homelessness. Over $70,000 worth of personal property was stolen, including his automobile, cash, and irreplaceable possessions. Plaintiff was evicted from

his apartment due to his wrongful arrests and was forced to fight baseless criminal charges for nearly a year before they were finally dropped.

38. Defendants' deliberate indifference and unconstitutional conduct deprived Plaintiff of his rights, causing irreparable harm to his life and livelihood.

**COUNT I**
**42 U.S.C. §1983-Retaliation and Use of Excessive Force in Violation of the 1st Amendment of the United States Constitution**

39. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

40. When alleging a First Amendment retaliation claim, a Plaintiff must show "(1) that [plaintiff's] speech was protected; (2) defendant's alleged retaliatory action adversely affected the plaintiffs constitutionally protected speech; and (3) a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." *See Dickerson v. Duncan*, Civil Action No. 7:19CV00802, 2020 U.S. Dist. LEXIS 2543, at 6-7 (W.D. Va. Jan. 7, 2020) (internal quotations omitted) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000)).

41. Defendant Keteltas, Hernandez, and Garcia while acting under the color of the law, violated the Plaintiff's constitutional rights by using excessive force against him and arresting him for speaking mere words from inside of his own home. A home that belonged to Hill, and that Griffith was—at the time—legally trespassing upon. Hill informed Defendants that the apartment was his and that Griffith did not have legal rights to be there.

42. Plaintiff was engaged in protected speech. Plaintiff told Defendant Officers it was his apartment, Griffith was trespassing, and he had the right to remove her.

43. Defendant took retaliatory action against Plaintiff that adversely affected Plaintiff's constitutionally protected speech, when he pulled him out of his own home, using excessive force and arrested him.

44. These actions were directly motivated by Plaintiff's speech.

45. These retaliatory acts violated the constitutional rights guaranteed to Mr. Hill by the First Amendment of the United States Constitution. Defendant Keteltas, Hernandez, and Garcia action were not taken in good-faith and were in violation of clearly established law.

46. Defendant Keteltas, Hernandez, and Garcia lacked probable cause when he took these retaliatory actions against Plaintiff.

47. Defendants only took action against Hill based on his statements that he was angry with Griffith and out of fear due to his stature—as shown in statements to Griffith prior to the arrest.

48. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

49. Because Defendant Keteltas, Hernandez, and Garcia actions, and possibly other employees, agents, and/or representatives of the DPD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983))

**COUNT II**
**42 U.S.C. §1983 - Violation of 4th Amendment of the United States Constitution**

50. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

51. Defendants Keteltas, Hernandez, and Garcia while acting under the color of the law, violated Mr. Hill's constitutional rights by without probable cause unreasonably seizing Mr. Hill and using excessive force against him, as described herein throughout, which resulted in Mr. Hill's injuries.

52. Defendants Keteltas', Hernandez', and Garcia's actions violated the constitutional rights guaranteed to Mr. Hill by the Fourth Amendment of the United States Constitution.

53. Defendants Keteltas', Hernandez', and Garcia's actions were not taken in good-faith and were in violation of clearly established law.

54. Plaintiff was handcuffed too tightly, and pain requiring medical treatment.

55. Officers should have verified Griffith's status as a tenant before arresting Plaintiff.

56. Defendants Keteltas', Hernandez', and Garcia's used excessive force at the time they unreasonably and unlawfully pulled Mr. Hill from his residence and treated him aggressively.

57. Griffith, the alleged victim, was not injured, gave inconsistent statements, and had drug paraphernalia (and quite possibly, given Hill and Griffith's statements, drugs) in her possession.

58. Each named Defendant's actions were unnecessary, unreasonable, unlawful and unjustified.

59. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both

compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

60. Because Defendant Keteltas, Hernandez, and Garcia's actions, and possibly other employees, agents, and/or representatives of the DPD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty*., No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

**COUNT III**
**42 U.S.C. §1983 – Failure to Intervene in Violation of the 4th Amendment of the United States Constitution**

61. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

62. Defendants Keteltas, Hernandez, and Garcia had a duty to intervene when an officer was violating Mr. Hill's constitutional rights, which resulted in the infliction of excessive force upon Mr. Hill.

63. Defendants Keteltas, Hernandez, and Garcia observed and/or had reason to know that excessive force was being inflicted upon Mr. Hill without a legitimate goal or justification.

64. Defendants Keteltas, Hernandez, and Garcia had the opportunity and means to prevent the excessive use of force and/or violations of Mr. Hill's constitutionally protected rights from occurring.

65. Officers stood merely feet away and watched as Plaintiff was unlawfully arrested but did nothing.

66. After the first arresting officer in both scenarios arrested Hill, the other responding officer had time to stop the handcuffing but failed to act.

67. Other officers saw the arrest was unlawful but participated anyway.

68. Finally, detectives were made aware of the multitude of shortcomings of officers and the baseless grounds for arrest and prosecution.

69. Despite Hill's multiple requests for information and help, they did not respond and declined to provide information that was legally required to be provided to Hill.

70. Detectives failed to investigate Hill's claims, and failed to even ascertain his side of the story.

71. "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *See Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id*. at 204 (internal footnote omitted)

72. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

73. Because the Defendants' actions, and possibly other employees, agents, and/or representatives of the DPD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive

damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

## COUNT IV
## 42 U.S.C. §1983 – *Monell* Liability

74. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

75. The DPD is the law enforcement agency in the City of Dallas, Dallas County, Texas.

76. The Chief of the DPD is the "policymaker" with respect to DPD, as a law enforcement agency. *See e.g., Revene v. Charles County Comm'rs*, 882 F. 2d 870, 874 (4th Cir. 1989).

77. Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

78. Defendant Garcia, as the chief of police and policymaker for the City of Dallas, has a custom, pattern, practice, and/or procedure of hiring police officers who he knows have committed acts of violence and/or have a propensity to do so.

79. When these officers inevitably commit acts of violence while working for the DPD

Defendant Garcia would ratify their unconstitutional acts and assist in covering up the officer's bad actions by charging members of the community, who fall victim to these officers, of crimes.

80. As evidence of the above-stated custom, pattern, practice, and/or procedure, the DPD covers up all acts of gender discrimination. DPD just assumed that the male at the Hill residence was responsible for the incidents that made the basis of the subject suit.

81. In the instances cited above, no person or law enforcement officer was in imminent danger and no exigent circumstances existed.

82. Moreover, Defendant Garcia was aware that civil rights violations, criminal acts, and other egregious misconduct had been carried out by his officers, but no action has been taken.

83. Consistent with and as a result of DPD's customs, patterns, practices, and/or procedures, Defendant Kataeltas, Hernandez, and Garcia unjustifiably and unlawfully pulled Mr. Hill from his home.

84. As a direct and proximate result of the DPD's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.

85. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

86. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the City of Dallas and the DPD, through its policymaker, Defendant Garcia (and possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained

by Mr. Hill.

**COUNT V**
**Intentional Infliction of Emotional Distress**

87. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-38, as set forth herein.

88. By pulling Mr. Hill from his home with absolutely no reason or probable cause Defendant engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

89. Each Defendant acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from his outrageous conduct.

90. Each Defendant's actions caused Mr. Hill to suffer severe emotional distress as he was being confined, restrained and arrested without probable cause.

91. The emotional distress Plaintiff experienced was so severe, no reasonable person could be expected to endure it.

92. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of his automobile, loss of his personal possessions, loss of his dwelling, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

93. The actions of each Defendant against the Plaintiff were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted

by law.

WHEREFORE, the Plaintiff, Gregory Hill, prays as follows:

A. Compensatory damages for all past and future economic losses and expenses incurred by the Plaintiff as a result of the Defendants' misconduct;

B. General damages for all past and future physical pain, mental suffering, and emotional distress suffered by the Plaintiff;

C. Punitive damages to the fullest extent permitted by law;

D. Pre-judgment and post-judgment interest;

E. Declare that the Defendants' acts, taken in their official capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

F. Declare that the Defendants' acts, taken in their individual capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

G. Immediately terminate all Defendant officers and investigators employment relationship with the DPD, without severance;

H. Enjoin Defendants from engaging in hiring practices that result in the hiring of police officers without proper vetting or review;

I. Order the Defendants to adopt and implement policies, training, accountability systems and practices to remedy the constitutional and statutory violations described herein;

J. An award of attorneys' fees, costs (including expert fees), and litigation expenses pursuant to 42 U.S.C. § 12205;

K. An award of interest upon the original sums of said award of attorney's fees, costs (including expert fees), and other expenses of suit; and

L. Such other relief as may become apparent from discovery as this matter matures for trial and as the Court deems just and proper, and/or is allowable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,
By: */s/ Valerie Yanaros, Esq.*
Valerie Yanaros
Counsel for Plaintiff
Texas State Bar No.: 24075528
8300 Douglas Avenue Suite 800
Dallas Texas 75225