IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGG HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-0004-N |
| | § | |
| EDGARDO GARCIA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses former Dallas Police Chief Eddie Garcia and Dallas Police Department officers James Keteltas, Jose Hernandez, Derek Gaffiney, and Marcos Ortiz's (collectively "Defendants") motion to dismiss [30]. Because Plaintiff Gregg Hill has failed to state claims upon which relief can be granted, the Court grants Defendants' motion and grants Hill leave to amend his complaint.

## I. ORIGINS OF THE DISPUTE

This case arises out of two arrests of Hill pursuant to a domestic violence call at Hill's residence. The first arrest occurred on or about January 6, 2022, when two Dallas police officers, Keletas and Hernandez, responded to a false report that Hill assaulted his former girlfriend, Elizabeth Griffin.[1] Pl.'s Am. Compl. ¶¶ 17–19. Griffith told police she experienced pain in her shoulder because Hill pushed her down after discovering that she placed syringes in the toilet. *Id*. ¶ 24. Griffith also claimed Hill "picked her up and threw

---

[1] The Court accepts the allegations in the complaint as true for the purposes of this Order.

her on the ground," and that Hill slapped her. *Id*. Hill alleges these statements are inconsistent both with each other and with police bodycam footage because the footage shows little to no visible injuries nor any marks consistent with a "slap" handprint. *Id*.

When the police officers arrived, Hill explained that he did not harm Griffith, rather, he invited Griffith as a social guest but now wanted her to leave. *Id*. ¶ 20. Hill reported that Griffith stole his work phone and that Hill was concerned she steal would other valuables. *Id*. ¶¶ 19–20. Hill also noted that she had a criminal record, violated her parole before, and had a history of drug use and falsely accusing others of harm. *Id*. ¶¶ 19–20. The police officers proceeded to remove Hill from his residence and arrest him. *Id*. ¶ 23. Hill alleges that despite complying with the arresting officer's requests, the officer twisted his arm and wrist while placing him in handcuffs. *Id*. ¶ 25. Additionally, officers forced Hill to remain in the car for over an hour after Hill was in visible distress and despite Hill's request to stand up due to an issue with his left side. *Id*. ¶ 27.

Three days later, officers arrested Hill a second time when he attempted to regain access to his apartment. *Id*. ¶¶ 28, 30. Griffith was present again and screaming. *Id*. ¶ 28. Chief of Police, Edgardo Garcia, arrived with another officer and arrested Hill. *Id*. ¶ 29. Prior to the arrest, Garcia noted that everything had been taken from the apartment, but did not ask either party for proof of residence. *Id*. Hill alleges it was Griffith who took his 2020 Toyota Camry, business equipment, personal belongings and financial assets. *Id*. ¶ 30. Hill filed multiple police reports and calls for a year and a half, but police took no action. *Id*. ¶¶ 30, 35. As a result, Hill spent multiple days in jail, paid bond fees, suffered

financial loss, emotional distress, and homelessness.  *Id.* ¶ 37.  Therefore, Hill brings five claims against five police officers.  *Id.* ¶¶ 6–14.

## II.  RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## III.  THE COURT GRANTS THE MOTION TO DISMISS

Defendants move to dismiss all five of Hill's claims for: (1) false arrest; (2) First Amendment retaliation; (3) excessive force; (4) failure to intervene; and (5) *Monell* liability.  The Court takes each of Hill's claims in turn.

### A.  Hill Fails to State a False Arrest Claim

Hill has not alleged sufficient facts to support a false arrest claim for the arrest on January 6, 2022.  "The Fourth Amendment requires that an arrest be supported by a properly issued warrant or probable cause." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).  Under a retaliatory or false arrest claim, a plaintiff "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).  Hill has not plead a plausible claim for the arrest because the facts demonstrate that officers evaluated statements from Griffith and Hill and observed at least one visible "mark" on Griffith's face.

Taking the facts in the light most favorable to Hill, the officers had probable cause because Griffith's statements can be read consistently.  *See* Pl.'s Am. Compl. ¶ 24.  Probable cause is "fluid . . . turning on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 231 (1983).  Griffith explained to the officers the level of pain she was experiencing and then described the violence she alleges Hill engaged in — pushing her down, throwing her on the ground, and slapping her.  *Id*.  Additionally, body camera footage may not show injuries appearing immediately after the alleged altercation.  *Id*.  Defendants Keteltas and Hernandez listened to both parties and based on their impression of the stories, the parties, and the injury on Griffith's face, the officers decided that the elements of domestic violence appeared to be met.  That police arrested Hill shortly after is irrelevant because probable cause exists. *Nieves*, 587 U.S. at 404.  Thus, the Hill has not plead sufficient facts to show officers lacked probable cause.

Accordingly, the Court dismisses Hill's Fourth Amendment false arrest claim and grants leave to amend.

### B. Hill Fails to State a First Amendment Claim

Hill fails to state a First Amendment claim because Hill does not properly allege the officers lacked probable cause or that he was engaged in constitutionally protected speech to support a claim that the arrest on January 6, 2022, was a retaliatory arrest. To survive dismissal, Hill must show that he was "(1) engaged in constitutionally protected activity, (2) the defendant['s] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant['s] adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

However, a retaliation claim is only available "when non-retaliatory grounds are in fact insufficient to provoke" the arrest, meaning that the officer's subjective motivation must be the but-for cause of the adverse action against the plaintiff. *Bailey v. Ramos*, 125 F.4th 667, 684 (5th Cir. 2025). When a police officer has probable cause to arrest a person, a claim that the arrest was retaliatory in violation of the First Amendment fails as a matter of law. *Cruz v. Delgado*, 2017 WL 11503868, at *5 (S.D. Tex. 2017) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause.")). Because Hill has not shown that the officers lacked probable cause, his First Amendment retaliation claim fails as a matter of law. *See supra* III.A.

Notwithstanding probable cause, Hill has not plead facts to support a retaliatory arrest. Hill's complaint only includes statements he made on January 6, 2022, but Hill has not shown that his speech was protected nor that the officers' subjective motivations were the but-for cause of the arrest. First, Hill's alleged statements to the police are not protected speech. Hill told the police that Griffith "is a junkie," that Hill "tr[ied] to help somebody and this is what [he] gets," and disclaimed that he touched or harmed Griffith. Pl.'s Am. Compl. ¶ 23; Pl.'s Resp. 3–4. Hill provides no legal basis for suggesting that any of the statements are protected speech. *See Hartman v. Moore*, 547 U. S. 250, 256 (2006). Hill also fails to plead facts that indicate his speech was the but-for cause of his arrest. *See Tompkins v. Vickers*, 26 F.3d 603, 609 (5th Cir. 1994). As alleged, Hill's statements are unrelated to his arrest and no facts demonstrate, even circumstantially, that officers were motivated by his speech. Accordingly, the Court dismisses Hill's First Amendment claim and grants leave to amend.

### C. Hill Fails to State an Excessive Force Claim

Hill fails to state a claim for excessive force for either arrest on January 6, 2022, or January 8, 2022, because Hill has not shown a cognizable injury or that the officers were objectively unreasonable. To establish a Fourth Amendment excessive force claim Hill must show he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable."

*Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).   Hill fails to state a viable Fourth Amendment claim. [2]

First, Hill's injury is *de minimis*.   Hill alleges that while arresting him, officers placed him in handcuffs too tightly and twisted his arm and wrist such that one officer noted the cuffs were "all messed up."  Pl.'s Am. Compl. ¶ 26, 54.  "To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*."  *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (finding that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force"); *see also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that officer contact from solely cuffing a suspect and cuffing too tightly does not amount to excessive force).  Here, Hill claims that his injuries required medical treatment but does not allege the nature or severity of his injuries nor the type of treatment Hill required.  *See Heitschmidt v. City of Houston*, 161

---

[2] In addition to the Rule 12(b)(6) standard of dismissal, the Court must also consider the standard for asserting qualified immunity. "Qualified immunity is a defense available to public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'"  *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To resolve a public official's qualified immunity defense, a court considers if the plaintiff has shown a violation of a constitutional right and if the right was "clearly established" at the time of the public official's alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[C]ourts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 235 (2009).  Because Hill does not state a valid Fourth Amendment claim, the Court does not address whether the Defendants are entitled to qualified immunity.

F.3d 834, 840 (5th Cir. 1998). Thus, reading the facts in the light most favorable to Hill, the Court finds that Hill has not shown his injuries are more than *de minimis*.

Second, Defendants do not address and, therefore, do not dispute that the arrest effectuated by handcuffing Hill caused the arm and wrist twisting. Finally, because Hill fails to plead more than *de minimis* injuries, the Court does not address whether the Defendants' use of force was unreasonable.[3] Accordingly, the Court dismisses Hill's claim for excessive force and grants leave to amend.

### D. Hill Fails to State a Claim for Failure to Intervene

Hill fails to state a claim that defendants Keteltas, Hernandez, and Garcia failed to intervene to prevent the use of excessive force. An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act. *Joseph ex rel Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). Hill does not specify which arrest he alleges Defendants failed to intervene in, but he does not plead a viable claim for either the January 6, 2022, or January 8, 2022 arrest.

First, excessive force is a necessary element to assert a claim of failure to intervene to stop the alleged use of excessive force. Because Hill failed to state a claim that the force used by the officers was excessive, Hill has also failed to state a claim of failure to

---

[3] If it needed to reach it, the Court would hold Hill did not satisfy the third requirement. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009); *Graham v. Connor*, 490 U.S. 386, 396 (1989).

intervene. *See Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011); *see also Spencer v. Rau*, 542 F. Supp. 2d 583, 595 (W.D. Tex. 2007).

Notwithstanding excessive force, Hill's allegations in support of this claim fall short of the requirement to allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of the claim. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014); *see* FED. R. CIV. P. 8(a). Hill alleges that Keteltas, Hernandez, and Garcia were present at the time of his arrest but merely concludes that the officers had the time to stop the handcuffing. Pl.'s Am. Compl. ¶¶ 64, 66. Hill, therefore, pleads only a conclusion that the officers had the time and opportunity to stop any alleged misconduct which does not meet the standards of Rule 8(a)(2). *See Iqbal*, 556 U.S. at 678. Accordingly, the Court grants Defendants' motion to dismiss Hill's claim for a failure to intervene and grants Hill leave to amend.

### E. *Hill Does Not Plausibly Allege a* **Monell** *Claim Against Defendants*

Hill does not have a viable *Monell* claim. First, Hill has not sued the City of Dallas. A *Monell* claim is entirely premised on suing a *municipality* — not individuals. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978). Thus, Hill's *Monell* claim here against only individuals is no *Monell* claim at all. Second, Hill's failure to plead a constitutional violation is fatal because "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)).

Even looking beyond technical errors, Hill has not plausibly alleged a *Monell* claim. Under 42 U.S.C. § 1983, every "person who, under color of any statute, ordinance,

MEMORANDUM OPINION AND ORDER – PAGE 9

regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities, shall be civilly liable to the injured party. "Municipalities can be held liable for violating a person's constitutional rights under [section] 1983." *Est. of Bonilla v. Orange County*, 982 F.3d 298, 308 (5th Cir. 2020) (citing *Monell*, 436 U.S. 658). However, a municipality cannot be held liable solely on a *respondeat-superior* theory. *Monell*, 436 U.S. at 691.

To state a claim for municipal liability under *Monell*, a plaintiff must plead facts that plausibly establish three elements: (1) a policymaker; (2) an official custom or policy; and (3) a violation of constitutional rights whose moving force is the custom or policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Hill fails to plead facts that establish Chief Garcia was a policymaker. Hill claims that Garcia, as a final policymaker, failed to adequately train and supervise officers to respond to domestic disturbance calls. *See* Pl.'s Resp. 7–8. This, Hill alleges, led to gender-based bias and constitutional violations. *Id*. However, the final policymaker for the City of Dallas is the Dallas city council. *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016). Thus, to hold the City of Dallas liable, Hill must claim that the city council promulgated or ratified an unconstitutional policy. *See id*. However, Hill has not alleged a city policy and does not allege that the City of Dallas delegated that authority to Garcia. Thus, Hill has not sufficiently alleged Garcia was a policymaker.

Because Hill fails to state a claim under *Monell*, the Court declines to address whether there was an official custom or policy and whether there was a constitutional

violation with adequate moving force. [4] Accordingly, the Court dismisses the *Monell* claim and grants Hill leave to amend his pleadings.

### F.  Defendants are Entitled to Governmental Immunity from the Tort Claim

The Texas Tort Claims Act ("TTCA") bars Hill's from bringing an intentional infliction of emotional distress ("IIED") claim against the Defendants.  Pl.'s Am. Compl. ¶¶ 87–92.  The TTCA allows dismissal of a suit against a government employee in her "individual" capacity for any conduct that arises out of the course and scope of employment.  This is because plaintiffs can bring suit against such conduct only in the employee's official capacity.  TEX. CIV. PRAC. & REM. CODE § 101.0106(f).  Thus, the Court examines Hill's claim as one against Defendants in their official capacities.

Under TTCA, "an employee is considered to have been sued in his official capacity when the suit (1) is based on conduct within the general scope of his employment, and (2) could have been brought under the TTCA against the government."  *Stinson v. Fontenot*, 435 S.W.3d 793, 794 (Tex. 2014) (per curiam).  Hill does not dispute under section 101.106(f) that Defendants are "employees" under TTCA, TEX. CIV. PRAC. & REM. CODE § 101.001(2), and Defendants were employed by a "governmental unit" (Dallas Police

---

[4] If it needed to reach them, the Court would hold Hill has not met the second and third requirements.  *See Verastique v. City of Dallas*, 106 F.4th 427, 434 (5th Cir. 2024) (explaining the standard constituting a pattern); *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005) (same); *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)) (holding the requisite proof needed to satisfy deliberate indifference);  *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 461 (5th Cir. 2000)) (same).

Department) that Hill could have sued instead.  *Id.* § 101.00(3)(B).  Hill argues only that the officers' acts were outside the general scope of their employment.  Pl.'s Resp. 8.

As alleged, Defendants were acting within the scope of their duties.  TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority."  TEX. CIV. PRAC. & REM. CODE § 101.001(5).  Courts must objectively determine whether "there [is] a connection between the employee's job duties and the alleged tortious conduct," not his state of mind. *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (citing TEX. CIV. PRAC. & REM. CODE § 101.001(5)).  Here, Hill does not dispute that Defendants responded to the 911 call as part of their police duties.  Moreover, Texas law explains "an officer's scope of employment includes . . . investigating [and] arresting." *Rivera v. Garcia*, 589 S.W.3d 242, 249 (Tex. App. — San Antonio 2019, no pet.); *see also Ogg v. Dillard's Inc.*, 239 S.W.3d 409, 419 (Tex. App. — Dallas 2007, pet. denied)).  Thus, so long as, in part, Defendants were arresting Hill to comply with their obligations as officers, the conduct was within their scope of employment.

In turn, because Defendants were acting within the scope of their employment, they are entitled to the same sovereign immunity protections available to the City of Dallas. The City's immunity is subject to TTCA.  TTCA is a limited waiver of governmental immunity in certain circumstances but "does not apply to claims arising out of an intentional tort." *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)).  IIED is an intentional tort, therefore,

MEMORANDUM OPINION AND ORDER – PAGE 12

Defendants have not waived their immunity to Hill's IIED claim on this basis. *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65–67 (Tex. 1998). The Court concludes that Hill's IIED claim does not fall within the limited waiver of governmental immunity embodied in TTCA and dismisses the IIED claim against Defendants. The Court grants Hill leave to amend.

### G. Hill Fails to State a Claim Against Gaffney and Ortiz

Hill does not allege sufficient facts to establish officers Gaffney or Ortiz were personally involved or acted wrongfully. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)). More specifically, under section 1983, a plaintiff must plead specific facts that allege a cognizable constitutional violation in order to avoid dismissal for failure to state a claim. *Brinkmann v. Johnston*, 793 F.2d 111 (5th Cir.1986).

Hill's complaint names Gaffney and Ortiz but does not otherwise mention what role either defendant played, such as whether they were at the scene, responded, or participated in any alleged illegal conduct. In his response, Hill cites three paragraphs of the complaint where he pleads that he "identifie[d] them as officers present at the time of key events." Pl.'s Resp. 10. However, Hill's citations do not meet the *Iqbal-Twombly* standard. The first two paragraphs allege that Hill resides in Texas and that Garcia is the Chief of the Dallas Police Department. Pl.'s Am. Compl. ¶¶ 4, 6. The third paragraph alleges that "responding officers" arrested plaintiff but only identifies Defendants Keteltas and Hernandez as the responding officers for that key event — not Gaffney or Ortiz. *Id.*

MEMORANDUM OPINION AND ORDER – PAGE 13

¶ 23.  Hill's brief also does not provide any facts to infer more than the mere possibility of misconduct.  Thus, because Hill has not plead any facts alleging misconduct on the part of Gaffiney or Ortiz, the Court thus dismisses these claims.

### CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion and dismisses all of Hill's claims.  Then, the Court grants Hill leave to amend his complaint within thirty (30) days of this Order.  If Hill does not amend his complaint within thirty days, the Court will dismiss all the claims with prejudice without further notice.

Signed November 18, 2025.

David C. Godbey
Senior United States District Judge